Hillsborough,
May 7, 1912.

United States Fidelity & Guaranty Co. *v.* Little *& a.*

An assignment of a liquor license by the holder thereof is not valid as against the state unless it is made in comformity with section 12, chapter 95, Laws 1903, and is assented to by the board of license commissioners.

The fact that a dealer in intoxicating liquor made a common-law assignment of all his property for the benefit of creditors and delivered his license to the assignee, prior to the commission of an offence for which the license was revoked, does not constitute a defence to an action against a surety upon the license bond.

Petition, for the cancellation of a bond to the state given by one Howe, who on May 1, 1905, was granted a third-class license for the sale of liquor at 365 Elm street, in Manchester, by the defendants, the board of license commissioners. Howe filed the bond, which was executed by himself as principal and the plaintiff as surety to secure his strict adherence to the terms of the license. He thereupon engaged in the liquor business at the place designated and so continued until August 4, 1905, when he made a common-law assignment for the benefit of his creditors of all his property to one Bodwell, who accepted the same and took full possession of the premises. Howe also delivered to Bodwell the liquor license. August 20, 1905, Howe unlawfully entered the premises and gave some of the liquor remaining there to two little girls. Upon complaint for this act to the board of license commissioners, a hearing was had on September 15, the license was revoked and cancelled, and a demand was made for the amount of the bond. In December, the plaintiff brought this petition for a cancellation of the bond. No objection was made to the form of the proceeding. The question whether upon the facts the prayer of the petition should be granted, or whether the petition should be dismissed, was transferred without a ruling from the May term, 1911, of the superior court by *Plummer,* J.

*Taggart, Burroughs & Wyman* and *William J. Starr (Mr. Wyman* orally), for the plaintiff.

*Edwin G. Eastman,* attorney-general (by brief and orally), for the defendants.

WALKER, J.   There is no contention that Howe's act of giving the liquor to the little girls was not an offence which justified the commissioners in revoking the license and claiming a forfeiture of the bond, if Howe at that time had been carrying on the business under his license.   But it is urged that previous to his alleged offence Howe had disposed of the business he was licensed to carry on at 365 Elm street, by a common-law assignment of it to Bodwell, together with the license issued to him by the board of license commissioners, and that thereupon he ceased to be a licensee and the bond became ineffective as security for his subsequent acts. The simple fact that he sold or assigned his stock and retired from the business did not amount to an abrogation of the license, or relieve him of the responsibilities assumed by him as a licensee; nor did it discharge the sureties upon his bond.   That this was the intention of the legislature is apparent from section 14, chapter 95, Laws 1903, where it is provided: "At any time after a license has been issued to any person, the same may be revoked and cancelled by said board, if any material statement in the application of the holder of the same was false, or if any provision of this act is violated at the place designated in the said license by the holder of the same, or by his agents, servants, or any person whomsoever in charge of said premises."   The holder of the license cannot avoid the consequences of a violation of its terms by transferring the business to another.   So long as the license stands in his name, he is a licensee and not a non-licensee, and is responsible for illegal acts done by "any person whomsoever in charge of said premises," even though such person may be his vendee or assignee.   Such, at least, seems to be the meaning of the statute; and if that view is correct, it is difficult to see why Howe is not responsible as a licensee for his illegal act, though committed after his voluntary assignment, or why that fact furnishes a defence to an action on his bond.

In *State* v. *Corron*, 73 N. H. 434, 446, it is said: "One of the terms of the license, either expressed therein or understood from the language of the act, was, therefore, that the provisions of the act should not be violated at the place designated in the license, by the holder himself or by any of the persons named above.   Such violation by any of these persons would constitute a breach of the bond conditioned upon constant adherence to the terms of the license."   If during the term of license the licensee turns over the control and management of the designated place to others, who violate the provisions of the license, his bond may be forfeited.   Whether the

transaction as between the parties to it is deemed to be a sale or not is immaterial, in the absence of knowledge of it by the commissioners. A sale does not relieve the person to whom they issued the license of the duties he voluntarily assumed thereunder in relation to the conduct of the business which they permitted to be carried on at the designated place. When Howe, therefore, assigned his business to Bodwell, he still remained the responsible licensee he was before, unless the assignment of all his property for the benefit of his creditors and the delivery of his license to the assignee was a valid method of transferring the license as against the state.

Section 12 of the license act provides: "The person to whom a license is issued, except a pharmacist, may sell, assign, and transfer such license during the time for which it was granted to any other person not forbidden to traffic in liquor under the terms of this act, . . . upon the making and filing of a new application and bond by the purchaser, in the form and manner provided for the original application and bond, and the presentation of the license to said board, who shall write or stamp across its face the words, 'Consent is hereby given for the transfer of this license to ————'; *provided, however,* that no such sale, transfer, or assignment shall be made except in accordance with the terms of this act." Evidently this provision of the statute was intended as a protection to the state against the transfer of licenses to irresponsible parties. So far as the state is concerned, the licensee is not permitted by a mere transfer or sale, unassented to by the commissioners, to relieve himself of the obligations of that position and install another in his stead. He acquires a personal privilege to traffic in liquors at a particular place, which is not absolute property transferable at his pleasure.

Under a similar statute the court say in *Gilday* v. *Warren*, 69 Conn. 237, 239: "Since the law prohibits the sale of intoxicants without a license, it follows that the granting of the license confers a right which previous thereto did not exist. . . . This right is personal. It cannot be transferred except by virtue of the express provisions of the statute (*s.* 3071). If it is done by virtue of such enactment, it must be done in strict compliance and accordance therewith. The transfer must be with the consent of the county commissioners, and it must be to a suitable person; and upon this the county commissioners decide in giving or withholding their consent. But further, not only must the person be suitable and the consent of the county commissioners granted, but the proceedings must be in the prescribed form, embracing an application, a

recommendation, and a bond, as required of the person to whom the license was originally granted. That all of these things are essential to the creation of the right in the transferee is evident, both from the very character of such right and also from the language employed in the statute providing what shall be done, not by the person to whom the license *is,* but by the one to whom it *is to be,* transferred, making these acts, therefore, precedent conditions to any transfer of title or right."

"Such license, when issued, is not a contract between the municipality and the licensee in which the latter has a vested right, but it is a mere permit which is not transferable except such transfer be authorized by ordinance and then only in the manner and form prescribed." *Hill* v. *Sheridan,* 128 Mo. App. 415, 419. That a liquor license is not assignable under Massachusetts law so as to bind the licensing board is clearly stated in *Tracy* v. *Ginzberg,* 189 Mass. 260. See, also, *Commonwealth* v. *Lavery,* 188 Mass. 13; *Hoagland* v. *Hall,* 38 N. J. Law 350; Joyce Intox. Liq., s. 298; 25 Cyc. 625.

If Howe's assignment in some sense transferred to the assignee his right to sell intoxicating liquors, and if as to him it transferred the license (*In re Wiesel,* 173 Fed. Rep. 718), it did not bind the state. As to the state, he remained the licensee and was responsible to it in that character for the conduct of the business at the place designated, when he entered the building and furnished the little girls with liquor. As he thus violated the terms of his license, his bond became liable to forfeiture therefor. The order must be,

*Petition dismissed.*

All concurred.